UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JOSE A. HERNANDEZ and KIM HERNANDEZ, h/w,<br><br>Plaintiffs,<br>v.<br><br>ASSOCIATED METAL WORKS, INC., and<br>US METAL WORKS, INC.<br><br>Defendants. | Civil Action No: 3-10-0544<br><br>Judge ~~Echols~~ Wiseman<br><br>Magistrate Judge Brown<br><br>JURY TRIAL DEMANDED |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01(d)(1)b.2, all parties submit the following proposed case management order.

**1. Jurisdiction:**

All parties agree that this Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1).

**2. Plaintiff's Theory of the Case:**

Plaintiffs, Jose A. Hernandez and Kim Hernandez assert claims against defendants, Associated Metal Works, Inc. and US Metal Works, Inc. for negligence, strict liability, breach of warranty and loss of consortium in connection with an accident that occurred while Jose A. Hernandez was working in the course and scope of his employment at Olhausen Billiard Manufacturing, Inc. on March 9, 2010.

Upon information and belief, in approximately June, 2006, defendant, Associated Metal Works designed, manufactured, tested, sold and otherwise installed a dust collection system with associated truck loading system at Olhausen

- 1 -

Case 3:10-cv-00544   Document 25   Filed 08/26/10   Page 1 of 10 PageID #: 105

Billiard Manufacturing, Inc.'s manufacturing plant in Portland, Tennessee. The dust collection system is designed to remove sawdust from inside the plant. Once the dust is removed from inside the plant, it is stored outside the plant in a hopper (referred to as a "truck loading bin" by defendants). The purpose of this hopper is to provide dumping into trucks for disposal. The dust bin/hopper which is affixed to the end of the dust collection system was installed, manufactured, tested and sold by defendants, US Metal Works, Inc. and Associated Metal Works, Inc.

Under normal circumstances, in order to dump the contents of the hopper, a dump truck would back up underneath the hopper, and an operator would stand on top of an observation/control platform and pull a hydraulic lever in order to open a "clam shell" opening on the bottom of the hopper to release the contents into the dump truck. In order to empty to contents of the hopper, the operator must activate a hydraulic control lever, and maintain constant pressure on the lever in order to actuate the hydraulic valve to open and close the "clam shell" located at the bottom of the hopper.

On the evening of March 9, 2010, Jose Hernandez was leaving work when he noticed smoke and sparks coming from an auger bearing located at the top of the hopper and smoke coming from inside the hopper. The sparks were extinguished with a dry chemical extinguisher and water was sprayed into the top of the hopper to douse any smoldering sawdust located inside the hopper bin. After the smoke dissipated from inside the hopper, Mr. Hernandez went to the dump observation/control platform, which is located approximately 10 feet above the ground, intending to pull the lever to open the "clam shell" on the bottom of the

- 2 -

Case 3:10-cv-00544 Document 25 Filed 08/26/10 Page 2 of 10 PageID #: 106

hopper to release any remaining sawdust from inside the hopper onto the ground below. As Jose Hernandez was attempting to dump the remaining sawdust from inside the hopper onto the ground below, a dust cloud formed underneath the hopper which suddenly and unexpectedly ignited in a flash, engulfing Jose Hernandez in flames. As a result of the flash fire, Jose Hernandez received immediate and severe injuries to his body, including severe and extensive thermal burns to more than 40% of his body, including his arms, legs, back, stomach and face.

Plaintiffs contend that defendant's pneumatic dust collection system and dust disposal hopper was defective and unreasonably dangerous for several reasons, including but not limited to the following:

> (1) it required the operator of the hydraulic control lever to stand in an unsafe and hazardous position in order to dump the contents inside the hopper, thereby exposing the operator to dust hazards, including explosions or fire;
>
> (2) it lacked a device that would allow the hopper to be opened from a safe distance away from the bottom of the hopper so that the operator would not be exposed to hazardous conditions associated with dust, including explosion or fire;
>
> (3) it lacked a shield or barrier on the dump observation/control platform which could protect the operator of the hydraulic control lever from becoming exposed to dust and dust hazards, including the risk of fire of explosion;
>
> (4) it lacked any type of misting or other system to reduce or eliminate the hazards associated with dumping dust from the hopper, including explosion or fire;
>
> (5) it lacked adequate warnings and instructions to warn owners and/or users of the system of the substantial risk of injury when standing on the dump observation/control platform and operating the lever to open the base of the hopper; and

Case 3:10-cv-00544 Document 25 Filed 08/26/10 Page 3 of 10 PageID #: 107

(6) it included unnecessary mechanical parts that posed a risk of creating sparks.

3. **Defendants' Theory of the Case:**

A. **U. S. Metal Works, Inc.**

U.S. Metal Works, Inc. ("USMW") admits that it manufactured the product identified by the Plaintiff as either a dust bin or a storage hopper. In actuality this product is referred to by U.S. Metal Works, Inc. as a "truck-loading bin". The truck-loading bin in question was sold to AMW and U.S. Metal Works, Inc. played no part in the installation of the bin.

Defendant, USMW expressly denies that the truck-bin in question was defective or unreasonably dangerous in any way. USMW denies that it was negligent in any way of the manufacture and installation of the truck-bin and further deny that they breached any warranties.

The Defendant, USMW compiled with all federal and state standards in the manufacture of the truck-bin in question which creates a presumption that the product is not unreasonably dangerous of defective. The truck-bin in question was not in substantially the same condition as it had been at the time it left the control of USMW. If, in fact, any portion of the bin caused the ignition of the contents of the bin, that portion of the bin was not in substantially the same condition due to complete lack of maintenance on the part of the Plaintiff and/or the Plaintiff's employer.

The truck-bin in question was manufactured using customary designs, methods, standards and techniques of manufactures of similar products.

Defendant, USMW alleges that the Plaintiff was guilty of negligence which was the proximate cause of his injury in that he made the decision to release the contents of

the bin causing the contents to drop several feet to the ground, which in fact caused the large cloud of dust which ignited and caused the injury to the Plaintiff. The Plaintiff knew or should have known that emptying the bin in the manner in which he did would create a hazard and that such hazard should have been apparent to him. Had Plaintiff not made the decision to drop the contents of the bin to the ground, he would not have been injured.

The cause in fact of the accident and the injury was the negligence of the Plaintiff's employer, Olhausen Billiard Manufacturing, Inc. in that the employer failed to properly maintain the truck-bin in question, failed to train its employees, including the Plaintiff, about proper maintenance of the truck-bin in question, failed to train its employees about the proper method for extinguishing a fire which might occur in the bin, failed to train its employees, including the Plaintiff, about proper safety procedures relating to maintenance and fires at any location within the Plant and failed to train and warn its employees about the danger of wood dust when suddenly released from the bin in question.

While expressly denying that the Co-Defendant, Associated Metal Works, Inc. was guilty of any fault under any theory, if it is determined that AMW failed to properly advise the employer and/or the Plaintiff about the proper use and maintenance of the truck-bin in question, then USMW asserts the doctrine of comparative fault by alleging that any such negligence proximately caused or contributed to the cause of the accident.

### B. Associated Metal Works, Inc.

Associated Metal Works, Inc. ("AMW") admits that it installed a dust removal system including a storage bin at Olhausen Billiard Manufacturing, Inc. This Defendant

- 5 -

Case 3:10-cv-00544 Document 25 Filed 08/26/10 Page 5 of 10 PageID #: 109

denies that it manufactured any product identified by the Plaintiff, and further denies that it "designed" the system except to the extent that it recommended and specified appropriate air flows and piping for the system. This Defendant installed the bin in accordance with the manufacturer's instructions.

Defendant AMW expressly denies that the system it installed was defective or unreasonably dangerous in any way. AMW further denies that it was negligent in any way with respect to the sale and installation of the system, and denies that it breached any warranties.

Any system and/or component part AMW supplied was designed, manufactured and assembled in accordance with all applicable United States governmental regulations and standards. AMW therefore relies upon T.C.A. § 29-28-104, which provides a rebuttable presumption that the product was not unreasonably dangerous by virtue of its compliance with applicable United States regulations and standards.

The system in question was manufactured using customary designs, methods, standards and techniques of manufactures of similar products.

AMW contends that at the time of the subject accident, the system was not in substantially the same condition as it had been at the time it left the control of AMW. The system was not properly maintained. This defendant avers that the claimed damages resulted from the acts or omissions of Olhausen Billiard Manufacturing, Inc., including but not limited to, failure to properly maintain its equipment; failure to train its employees in the use, maintenance, and operation of the equipment, and in proper safety procedures; failure to enlist the assistance of fire fighting professionals; and otherwise failing to provide a safe working place for its employees. The acts and omissions of

Olhausen constitute the cause in fact of the accident and any resulting damages and relieve this Defendant of any alleged liability.

AMW alleges that the Plaintiff was guilty of negligence that was the proximate cause of his injury in that he released the contents of the bin, knowing that the fire or sparks inside the bin were not fully extinguished. Opening the bin caused the contents to drop several feet, exposing a large cloud of dust to the air and resulting in the flash fire in which the Plaintiff was injured. The Plaintiff knew or should have known that emptying the bin in the manner in which he did would create a hazard.

While expressly denying that the Co-Defendant, U.S. Metal Works, Inc. was guilty of any fault under any theory, AMW asserts the doctrine of comparative fault by alleging that any negligence or fault attribute to U.S. Metal Works, Inc. proximately caused or contributed to the cause of the accident.

AMW avers that the accident and any claimed damages are the proximate result of independent and intervening causes, actions, agencies over which this defendant had neither control, nor the right to control and for which it is not liable.

4. **Identification of the Issues:**

The following issues have not been resolved:

A. What was the cause of the fire in the truck-bin in question?

B. Did the Plaintiff or Plaintiff's employer perform proper maintenance on the truck-bin in question and, if proper maintenance had been performed, would a fire have started in the bin?

C. Did the Plaintiff's employer properly train the Plaintiff and other employees about proper maintenance of the bin and proper procedures to follow if a fire occurred? If not, was such negligence the cause in fact of the accident?

- 7 -

Case 3:10-cv-00544 Document 25 Filed 08/26/10 Page 7 of 10 PageID #: 111

D. Was the Defendant U.S. Metal Works, Inc. guilty of any negligence in the design and manufacture of the truck-bin in question?

E. Was the truck-bin in question unreasonably defective or dangerous at the time it left control of USMW?

F. Is Defendant US Metal Works liable for the injuries sustained by Plaintiff, Jose Hernandez?

G. Was the Defendant, Associated Metal Works, Inc. guilty of any negligence which proximately caused or contributed to the accident and injuries of the Plaintiff?

H. Is Defendant Associated Metal Works liable for the injuries sustained by Plaintiff, Jose Hernandez.

I. Was the Plaintiff guilty of negligence which proximately caused or contributed to the accident and injuries?

J. What is the amount of damages to which Plaintiff Jose Hernandez is entitled?

K. What is the amount of damages to which Plaintiff Kim Hernandez is entitled?

5. **Need for Other Claims or Special Issues Under Rules 13-15, 17-21 and Rule 23 of the Federal Rules of Civil Procedure:**

The parties do not currently anticipate any additional counterclaims, cross-claims, third-party claims, or joinder of other parties or claims, or class action certification, or the need for resolution of any issues arising under the above-cited rules.

6. **Witnesses, if known, subject to supplementation for each party:**

The parties will identify witnesses in their Initial Disclosures.

7. **Initial Disclosures and Staging of Discovery:**

Plaintiff's initial disclosures were made on August 24, 2010. The parties do not wish to waive Fed.R.Civ.P. 26(a), but the compliance of that Rule shall be deferred until September 8, 2010.

- 8 -

Case 3:10-cv-00544 Document 25 Filed 08/26/10 Page 8 of 10 PageID #: 112

All non-expert discovery shall be noticed or scheduled by agreement (unless the parties otherwise agree in writing signed by counsel for all parties) not later than February 28, 2011. Disclosure of expert witnesses and Fed.R.Civ.P. 26(a)(2) statements for expert witnesses shall be served on opposing counsel not later than March 28, 2011. Disclosure of any rebuttal expert witnesses shall be served on opposing counsel not later than April 29, 2011. All discovery related to expert witnesses shall be completed not later than June 17, 2011. Depositions of all experts shall be completed not later than June 17, 2011.

The parties may serve discovery demands and discovery responses via telecopier and electronic mail, instead of or in addition to other forms of delivery permitted by the Federal Rules of Civil Procedure.

No motions concerning discovery are to be filed until after the parties have conferred in good faith and unable to resolve their differences, have scheduled and participated in a conference call with Judge Brown.

8. **Dispositive Motions:**

The deadline for the filing and service of dispositive motions is July 25, 2011. All responses to dispositive motions shall be filed not later than August 29, 2011. All replies to responses to dispositive motions shall be filed not later than September 12, 2011. If a dispositive motion is filed earlier than the deadline, the response and reply dates shall be adjusted accordingly such that any response shall be filed 28 days after the motion and any reply shall be filed not later than 14 days after the response. All memoranda in support of and in response to a dispositive motion shall be limited to 25 pages and the reply is limited to five pages, absent Court permission for longer pleading.

9. **Other Deadlines:**

The last day to amend the pleadings, other than the Pre-Trial Order and amendments to conform to evidence admitted at trial, shall be not later than December 3, 2010.

10. **Subsequent Case Management Conferences:**

A subsequent case management conference is scheduled for January 25, 2011, at 2:00 p.m. The subsequent case management conference will be conducted by telephone. Parties shall call (615) 695-2851. Either counsel or the Magistrate Judge may request that the subsequent case management conference be held in person; such request shall be made not later than seven days prior to the date of the subsequent case management conference.

11. **Alternate Dispute Resolution:**

The parties believe that some form of alternate dispute resolution may be appropriate in this proceeding. The parties request a settlement conference to be held at the earliest practicable date, with a target date of June 10, 2011.

12. **Jury Trial Date:**

Jury trial is set to begin on JAN 17, 2012, at 10:00 a.m. before Judge Wiseman. A pretrial conference shall be held on JAN 9, 2012 at 10:00 a.m. The trial is expected to last five to seven days. Judge Wiseman will issue a separate order setting forth his requirements for both the trial and pretrial conference.

_____
JOE B. BROWN
United States Magistrate Judge